UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LD GELATO LLC,

    Plaintiff,

v.

HARTFORD UNDERWRITERS
INSURANCE COMPANY, INC.,

    Defendants.

Civil Action No. 20-06215 (JXN) (JRA)

**OPINION**

**NEALS**, District Judge:

This matter comes before the Court on the motion for judgment on the pleadings [ECF No. 54] filed by Hartford Underwriters Insurance Company, Inc. ("Defendant"), to which LD Gelato LLC ("Plaintiff") filed opposition [ECF No. 58] and a reply [ECF No. 61] was filed by Defendant. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and venue is proper pursuant to 28 U.S.C. § 1391. The Court has carefully considered the parties' submissions and decides the matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons stated herein, the motion for judgment on the pleadings [ECF No. 54] is **GRANTED**.

**I.   BACKGROUND**

Plaintiff is an owner and operator of gelato companies that sell products in New York, Connecticut, and New Jersey. Compl., ECF No. 1 ¶¶ 1, 13. Defendant is an insurance company that issues policies to protect against property loss and liability. *Id.* ¶ 14. Plaintiff purchased an insurance policy from Defendant to provide coverage for lost business income and extra expenses due to property loss or damage, including lost business income and extra expenses attributable to civil authority actions, and loss or damage at dependent properties. *Id.* ¶¶ 2, 42-

43, 45-46, 49.  The insurance policy provided coverage from January 28, 2020, to January 28, 2021.  *Id.* ¶ 13.

In December 2019, the coronavirus responsible for COVID-19 emerged in China and spread to the United States.  *Id.* ¶ 3.  In January 2020, the World Health Organization declared COVID-19 a public health emergency.  *Id.* ¶ 4.  By March 2020, states throughout the country issued civil authority orders to address the emergence of the coronavirus, including New York, Connecticut, and New Jersey.  *Id.* ¶¶ 8, 30, 32-36, 38.  On March 21, 2020, New Jersey Governor Philip Murphy signed Executive Order No. 107, which required "brick-and-mortar premises of all non-essential retail businesses [to] close to the public" to prevent the spread of COVID-19.  *Id.* ¶ 38 (citations omitted).  To comply with the civil authority orders, Plaintiff suspended business operations.  *Id.* ¶¶ 9, 56.  Thereafter, Plaintiff submitted a claim to Defendant for property loss that resulted from the suspended business operations.  *Id.* ¶¶ 11, 72.  Defendant, however, denied coverage for the claim.  *Id.* ¶¶ 11, 73.

Ultimately, Plaintiff filed suit against Defendant for a declaratory judgment that the property loss was covered under the insurance policy and for damages due to breach of contract.  *Id.* ¶¶ 88-105.  Plaintiff alleged that the property loss triggered the Business Income, Extra Expense, Business Income From Dependent Properties, and Civil Authority provisions of the insurance policy, and that the Virus or Bacteria provision did not preclude coverage.  *Id.* ¶¶ 51-55, 66-69.  Defendant moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  ECF No. 54.  Plaintiff opposed the motion, and Defendant replied, ECF Nos. 58, 61.

## II.   LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). If a Rule 12(c) motion is based on failure to state a claim, "[it] is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of New York, New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010). Under these standards, a court "must accept the complaint's allegations as true and draw all reasonable inferences in favor of the non-movant." *Gross v. German Found. Indus. Initiative*, 549 F.3d 605, 610 (3d Cir. 2008). However, the allegations "must be enough to raise a right to relief above the speculative level" and support a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[I]n deciding a motion for judgment on the pleadings, a court may only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Wolfington v. Reconstructive Orthopaedic Associates II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (citations omitted).

## III.   DISCUSSION

Defendant moves for judgment on the pleadings for failure to state a claim upon which relief can be granted. ECF No. 54-1 at 12. Defendant argues that coverage was not triggered under the Business Income, Extra Expense, Business Income From Dependent Properties, or Civil Authority provisions because there was no "direct physical loss or damage" to property. *Id.* at 11. Additionally, Defendant argues that coverage was not triggered under the Civil Authority provision because the civil authority orders did not "completely prohibit[ ] access" to the insured premises or aim to avoid "property damage nearby." *Id.* Alternatively, Defendant argues that coverage was precluded under the Virus or Bacteria provision because the property

3

loss was attributable to the coronavirus responsible for COVID-19. *Id.* at 10. The Court addresses each argument in turn, against the backdrop of the insurance policy.

### A. The Insurance Policy

The insurance policy includes various provisions. The Business Income provision covers "direct physical loss of or direct physical damage to" property, and the Extra Expense, Business Income From Dependent Properties, and Civil Authority provisions cover "direct physical loss or direct physical damage to" property as well. Compl., ECF No. 1 ¶¶ 43, 45, 46, 49 (citations omitted). Under the Business Income From Dependent Properties provision, the loss or damage must occur at "the premises of a dependent property" rather than the insured premises. *Id.* ¶ 49 (citations omitted).[1] Likewise, the Civil Authority provision states that the loss or damage must occur at another property, though it also stipulates that the lost business income and extra expense must result from an "action of civil authority that prohibits access" to the insured premises. *Id.* ¶ 46 (citations omitted).[2] Moreover, under each provision, the lost business income and extra expense must be sustained or incurred during a "period of restoration" and the loss or damage must result from a "Covered Cause of Loss." *Id* ¶¶ 43, 45, 46, 49 (citations omitted). The insurance policy defines a "Covered Cause of Loss" as a "direct physical loss or direct physical damage unless the loss or damage is excluded" under another provision. *Id.* ¶ 41 (citations omitted). The Virus or Bacteria provision precludes coverage for loss or damage

---

[1] A dependent property is "property owned, leased or operated by others" on whom the insured depends for delivery of materials or services, acceptance of products or services, manufacture of products, or attraction of customers. Compl., ECF No. 1 ¶ 50 (citations omitted).

[2] Specifically, "[a]ccess to the area immediately surrounding the damaged property [must be] prohibited by civil authority as a result of the damage," the insured premises must not be "more than one mile from the damaged property," and "[t]he action of civil authority [must be] taken in response to dangerous physical conditions resulting from the damage" or "to enable a civil authority to have unimpeded access to the damaged property." Compl., ECF No. 1 ¶ 46 (citations omitted).

caused by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *Id.* ¶ 51 (citations omitted).

### B. Whether Coverage Was Triggered Under the Insurance Policy

Under New Jersey law, "the words of an insurance policy are to be given their plain, ordinary meaning." *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001).[3] However, "ambiguities in an insurance policy are to be interpreted in favor of the insured" and against the insurer. *Gibson v. Callaghan*, 730 A.2d 1278, 1282 (N.J. 1999); *see also Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010). Nevertheless, "in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability." *Longobardi v. Chubb Ins. Co. of New Jersey*, 582 A.2d 1257, 1260 (N.J. 1990). An ambiguity arises "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Lee v. Gen. Acc. Ins. Co.*, 767 A.2d 985, 987 (N.J. Super. Ct. App. Div. 2001).

Here, the insurance policy "unambiguously" does not trigger coverage for the losses suffered by Plaintiff, as the provisions require direct physical loss or damage, and "the Appellate Division has uniformly held that losses caused by the closure orders are not physical losses." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 147 (3d Cir. 2023).[4] Indeed, the insurance policy provisions are "not so confusing" because "average policyholders" can make out these boundaries of coverage. *Mac Prop. Grp. LLC & The Cake Boutique LLC v. Selective Fire &*

---

[3] "When a district court's jurisdiction rests on the diversity of the parties, the district court must apply the choice of law rules of the forum state." *Cook v. Gen. Nutrition Corp.*, 749 Fed. Appx. 126, 129 (3d Cir. 2018). Under New Jersey choice of law rules, "the law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy." *State Farm Mut. Auto. Ins. Co. v. Simmons' Estate*, 417 A.2d 28 (N.J. 1980).

[4] The Court will adopt the approach of the Third Circuit, which found that the Appellate Division decisions "are a strong indicator of how the Supreme Court of New Jersey would decide" the question of whether losses caused by the closure orders are physical losses. *Wilson*, 57 F.4th at 144.

5

*Cas. Ins. Co.*, 278 A.3d 272, 284 (N.J. Super. Ct. App. Div. 2022).[5] Under the plain and ordinary meaning of the insurance policy, the provisions do not cover the losses suffered by Plaintiff because "there was no damage to [its] equipment or property on or off-site that caused [its] premises to lose their physical capacity to operate, and there was no physical alteration that made [its] premises too dangerous to enter." *Id.*; *see also Highgate Hotels, L.P. v. Liberty Mut. Fire Ins. Co.*, 2023 WL 3047460, at *5 (N.J. Super. Ct. App. Div. Apr. 24, 2023); *AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co.*, 2022 WL 2254864, at *13 (N.J. Super. Ct. App. Div. June 23, 2022).[6] At most, the intended purpose of the premises was frustrated by the COVID-19 shutdown. *See Grand Cru, LLC v. Liberty Mut. Ins. Co.*, 2023 WL 2172401, at *4 (N.J. Super. Ct. App. Div. Feb. 23, 2023); *Appearance Workshop, Inc. v. Mercer Ins. Co. of New Jersey, Inc.*, 2023 WL 382305, at *2 (N.J. Super. Ct. App. Div. Jan. 25, 2023); *Rockleigh Country Club, LLC v. Hartford Ins. Grp.*, 2022 WL 2204374, a *4 (N.J. Super. Ct. App. Div. June 21, 2022). But physical losses occur when "the functionalities of [the] properties [are] nearly eliminated or destroyed," when "the structures [are] made useless or uninhabitable," or when "there [is] an imminent risk of either of those things happening." *Wilson*, 57 F.4th at 142.

---

[5] Plaintiff argues that the insurance policy provisions are ambiguous. ECF No. 58 at 12-13. However, the New Jersey decisions cited by Plaintiff are inapposite. In *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.* and *Delaware Valley Plumbing Supply, Inc. v. Merchants Mut. Ins. Co.*, the Court found it "unnecessary" to reach the question of whether the closure orders caused physical loss. 499 F. Supp. 3d 74, 79 (D.N.J. 2020); 519 F. Supp. 3d 178, 182 (D.N.J. 2021). In *Optical Services USA/JCI, et al. v. Franklin Mutual Insurance Company*, the court allowed the case to proceed because there was "limited legal authority in the State of New Jersey addressing this issue" at the time. BER-L-3681-20 (N.J. Super. Ct. Bergen Cty. Aug. 13, 2020), ECF No. 58-6 at 27-28. Now, there is legal authority in New Jersey to support the proposition that the COVID-19 shutdown did not cause physical loss. *See Mac*, 278 A.3d at 282-87. In any event, "[a]n insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants." *Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*, 160 A.3d 1263 (N.J. 2017) (citations omitted).

[6] The interpretation offered by the Appellate Division is supported by the temporal limitation in the insurance policy; each provision requires the lost business income or extra expense to be sustained or incurred during a period of restoration, which suggests that direct physical loss or direct physical damage entails an absence of capacity or a presence of dangerousness that must be remedied. *Wilson*, 57 F.4th at 143; *Mac Property,* 278 A.3d at 284.

6

Here, no functionalities were nearly eliminated or destroyed, no structures were made useless or uninhabitable, and there was no risk of any such devastation.

Nevertheless, Plaintiff argues that the insurance policy protects "against an immediate and materially perceptive destruction *or deprivation* of property" and that the preposition used in the provisions suggests protection of "a possessive relationship, with possessive meaning manifesting possession, or occupying or controlling property."  ECF No. 58 at 14 (citations omitted).  However, Plaintiff's construction of the provisions contravenes the interpretation offered by the Appellate Division, and Plaintiff's distinction between prepositions is immaterial. *See Mac Property*, 278 A.3d at 282-87; *Wilson*, 57 F.4th at 141 n.5.

The Civil Authority provision does not trigger insurance policy coverage for additional reasons.  For instance, there is no allegation that loss or damage at a nearby property resulted in the COVID-19 shutdown, let alone that dangerous physical conditions or unimpeded access at a damaged property were the reasons for the closure orders.  Plaintiff argues that the COVID-19 shutdown occurred because nearby properties posed a threat to "public safety" and "had the Coronavirus on [their] premises."  ECF No. 58 at 24 (citations omitted).  But the closure orders were issued "to mitigate health risks to the public and slow the spread of COVID-19 by limiting *person-to-person* exposure." *Wilson*, 57 F.4th at 147 (emphasis added); *see also Mac Property,* 278 A.3d at 289 ("EOs closed or restricted activities at premises of certain types within the state all at once to curb the spread of the COVID-19 cases.").  Even if the COVID-19 shutdown occurred because of a public safety risk or coronavirus presence in the vicinity, the closure orders were not issued because of dangerous physical conditions or unimpeded access at any damaged property. *See Mac Property,* 278 A.3d at 289 ("[P]remises were not selectively closed by the EOs due to damage to nearby property."); *see also Any Garment Cleaners Somerdale,*

7

*LLC v. Selective Ins. Co. of New England*, 2023 WL 2146612, at *6 (N.J. Super. Ct. App. Div. Feb. 22, 2023); *Pure Hair Salon LLC v. Hiscox Ins. Co. Inc.*, A-3617-20, 2023 WL 2439546, at *4 (N.J. Super. Ct. App. Div. Mar. 10, 2023). Moreover, access to the insured premises was not prohibited by the COVID-19 shutdown.[7] Thus, coverage does not apply under the insurance policy, no matter the provision invoked.

### C. Whether Coverage Was Precluded Under the Insurance Policy

Under New Jersey law, "insurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion." *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 16-17 (N.J. 1997). Nonetheless, "an insurance policy should generally be interpreted according to its plain and ordinary meaning . . . so as not to disregard the clear import and intent of a policy exclusion." *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1013 (N.J. 1998) (citations omitted).

Here, the plain and ordinary meaning of the Virus and Bacteria provision precludes coverage under the insurance policy for the losses suffered by Plaintiff.[8] Indeed, the Virus and Bacteria provision excludes insurance policy coverage for losses caused by any virus that can induce illness, "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." ECF No. 54-3 at 22. Here, COVID-19 was a cause of the losses suffered

---

[7] Plaintiff argues that the closure orders prohibited access to the insured premises and that "[t]he degree and scope of the access, if any, is a question of fact." ECF No. 58 at 23. However, "matters of statutory interpretation . . . are questions of law." *United States v. Lewis*, 438 Fed. Appx. 145 (3d Cir. 2011). The Court has examined the civil authority orders and found that the measures did not prohibit access, but at most proscribed or limited public-facing services. *See* ECF No. 1 at ¶¶ 30 n. 21, 32 n. 22, 33 n.23, 34 n.24, 35 n.25, 36 n.26, 38 n.28; *see also Mac Property*, 278 A.3d at 288 ("EOs neither prohibited access to plaintiffs' premises nor prevented plaintiff owners from being on their premises, but merely restricted their business activities.").

[8] Plaintiff argues that the Virus and Bacteria provision is ambiguous because another part of the insurance policy references loss or damage "*caused by* . . . virus" without anti-concurrent causation language. ECF No. 58 at 22 (citations omitted). However, the absence of anti-concurrent causation language in another part of the insurance policy has no bearing on the Virus and Bacteria provision. In any event, if the anti-concurrent language is removed from the Virus and Bacteria provision, a 'caused by' standard will still exclude COVID-19 losses from insurance policy coverage under a proximate causation theory. *See Mac Property,* 278 A.3d at 295.

by Plaintiff, even if other causes also contributed.[9] *See Mac Property,* 278 A.3d at 295 ("COVID-19 contributed to their business losses, and therefore their insurers satisfied their burden to show that the exclusions applied regardless of whether the EOs were considered a concurrent or sequential cause."); *see also AC Ocean Walk,* 2022 WL 2254864, at *14; Rockleigh, 2022 WL 2204374, at *4-5; Any Garment, 2023 WL 2146612, at *6; Grand Cru, 2023 WL 2172401, at *4; Appearance Workshop, 2023 WL 382305, at *3; Pure Hair Salon, 2023 WL 2439546, at *3.

Nevertheless, Plaintiff argues that the Virus and Bacteria provision does not exclude insurance coverage because "references to a virus throughout the Policy were intended to mean viruses at the premises" and there was no coronavirus at the insured premises. ECF No. 58 at 19 (citations omitted). Specifically, Plaintiff argues that "[t]he Limited Form clearly indicates that the physical presence of the virus at the [insured] premises is a condition of this limited coverage." *Id*. However, the Limited Form does not state that a virus must exist at the premises, and there is no reason to assume that the conditions of limited coverage are coextensive with the conditions of coverage exclusion. Although the insurance policy excludes coverage for "failure of communication supply services, power supply services, wastewater removal services, water supply services or other utility service supplied to the [insured] premises," the Virus and Bacteria provision does not reference the premises. ECF No. 54-3 at 23-24 (citations omitted). Therefore, coverage is excluded, notwithstanding the absence of COVID-19 at the insured property.[10]

---

[9] Plaintiff does not dispute that the coronavirus responsible for COVID-19 is a virus that can induce illness. *See* Compl., ECF No. 1 ¶ 19.

[10] Plaintiff argues that "when [Defendant] sought approval of various virus provisions in its policies, for both the liability and property sections, it described the provisions as applying narrowly to viruses *present* at an insured's property." ECF No. 58 at 20. However, extrinsic evidence cannot be examined if the provision at issue is unambiguous. *Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*, 143 A.3d 273, 280 (N.J. 2016). In any

9

IV. **CONCLUSION**

For the reasons set forth above, the motion for judgment on the pleadings [ECF No. 54] is **GRANTED**; and Plaintiff's claims are hereby **DISMISSED with prejudice**. An appropriate Order accompanies this Opinion.

s/ Julien Xavier Neals<br>
**JULIEN XAVIER NEALS**<br>
**United States District Judge**

**DATED:** June 6, 2023

---

event, the extrinsic evidence pertains to separate forms and exclusions and concerns liability coverage. *See* ECF No. 58-8 at 2; ECF No. 58-9 at 2-3. Accordingly, "[t]he record here is devoid of any evidence of a false statement or misrepresentation to a regulatory body regarding the scope of the virus exclusions." *TMN, LLC v. Ohio Sec. Ins. Co.*, 2023 WL 1830456, at *3 (N.J. Super. Ct. App. Div. Feb. 9, 2023); *Antone's v. Am. Prop. Ins. Co.*, 2023 WL 368431, at *3 (N.J. Super. Ct. App. Div. Jan. 24, 2023).